Good morning, Chief Judge Howard, members of the panel. My name is George Gormley, and I represent Michael Scott. In Mr. Scott's view, this criminal appeal arises from the government's breach of its February 2009 agreement, proffer agreement, with him, that it made with him and based on which he waived his Fifth Amendment right and provided substantial evidence to the United States. In February of 2009, he, Mr. Scott, was informed that he was under investigation for possible criminal activity involving real estate improprieties that are related to his real estate dealings in Suffolk County, Massachusetts. He engaged counsel, he and counsel appeared at the offices of the U.S. Attorney, and what I will characterize as the standard proffer agreement was produced by the government, reviewed by Mr. Scott, and signed by both parties. Is it standard to have a waiver of any casticarbides, in other words, to expressly allow the government to use indirectly gathered evidence from the information in the proffer? It is. It is. To my own understanding, the agreement, the agreement which Mr. Scott signed is, I say two things. It is the agreement that this court reviewed in Melbourne and it has been, the language in the agreement signed by Scott, has been used, in my experience, for some considerable number of years, and it is, to my understanding, something in the nature of an adhesion contract from the U.S. Attorney's office. It is not something the language of which it is bargained over. So that is why I characterize it as the standard agreement in use in this district. So Mr. Gormley, you were able to get, to have a successful motion to suppress, and then Mr. Scott entered into a plea agreement, nonetheless, why aren't there any errors prior to the plea agreement waived? Well, he changed his plea, there was no, there was not an agreement, Judge, and I'm sorry, that's what I meant, he entered a plea. Yes, he did. Generally, our case law says that any errors made prior to the entry of a plea are waived. I appreciate the court's question, and I would say, in response to that, yes, he did. The motion to suppress, Mr. Scott was represented by one attorney during the investigative phase or the proffer phase of this case. When he was indicted, he engaged separate counsel, not affiliated with the original attorney, that separate counsel, let me refer to it as trial counsel, indicated that he, on behalf of Mr. Scott, was going to move to suppress the material that the government possessed on the grounds that it had come from Mr. Scott. The government represented that the only two areas where there would possibly be question as to whether or not the use of the evidence was permitted derivative use or not was from the material seized pursuant to the consent to search form, and the same material later seized from the bankruptcy trustee. Everything else the government represented to the court and the motion to suppress proceeded on the basis that everything or anything else in the government's possession was independent of the proffer. At the time of the motion to suppress, Mr. Scott and his counsel did not have the jenks material, essentially the grand jury material. Based on, Judge Stearns made his ruling based on the government's representations. Was there a request for the jenks material? I'm sorry? Was there a request for the jenks material? Was there a request for the grand jury transcript that the government didn't provide? I believe the trial counsel requested that material and it was told that it would be produced at the time lauded by the local district court rules. The government brief says that it was provided. I'm sorry? The government's brief says that the grand jury transcript was provided. Well, it eventually was provided. I don't say that it eventually was provided. It was provided shortly before trial and after the motion to suppress was heard. And prior to the entry of a plea? Yes, it was sent by trial counsel to Mr. Scott and his place of detention. The local authorities didn't deliver it to him until after the plea. He then, when having bled, returned to his place of detention, received from the local jail authorities the disc containing the grand jury and then wrote the court. Are you saying the government didn't give his attorney a copy of the transcript? Well, they did in this form. So what's the problem? I'm sorry? I'm not following the problem. If they had a copy of the transcript before the entry of the plea so that they could evaluate what information was put before the grand jury, then I don't see why this argument is still not waived. Well, Judge, I think the lawyers had the grand jury material. The lawyers had not been to the proffers with Mr. Scott because they had not been engaged until the indictment was returned. The only person who had been to the proffers and knew what he had disclosed to the government was Mr. Scott, who was up at the Essex County House of Correction, came down, changed his plea, and then after that saw Agent Gallus's testimony, saw and reviewed Agent Gallus's testimony. The difference... Is this an ineffective assistance of counsel? Well... Because I'm not understanding why the attorney didn't talk to the defendant before entering a plea if the government provided the transcript prior thereto. My answer to that at this stage of the matter is I don't understand that's a permissible argument to make to the court that if it exists, that's an argument for somewhere later on. Is that true? This, as I see it, is a straight breach of contract case where, based on the material that Agent Gallus gave to the grand jury, it came from one place, it came from Mr. Scott. It was not derivative, it was direct use of the information that he provided pursuant to paragraph one of the agreement which the government used in crafting the indictment and the superseding indictment against him. In almost every criminal case, the government is going to make statements and arguments that I suppose you could call representations, such that the search was lawful, the officer believed this, they had this, they think this is a crime, etc. And the defendant has to then evaluate what he thinks his chances are of dealing with that. If we suddenly had a rule that all of those we're going to call misrepresentations and then after a guilty plea someone could have second thoughts and want to challenge it, where would this end? I don't know. Sure, where would we draw the line? What principle would you have us distinguish the run-of-the-mill ordinary case from this one? Well, in this case, Judge, there is a proffer agreement under which all of these statements have been given. There is, I admit, there is a problem with the timeliness of my client's complaint regarding the information he provided. But he did provide it prior to judgment being answered against him. He provided it at the earliest time that it was available to him. He turned and wrote to the court. It's in the supplemental appendix. So I think that here a decision remanding the case for hearings before the district court to sort out all of this would be faithful to this court's Rule 11 jurisprudence and the fact that a guilty plea is a break in the chain because my understanding is that, and I'm going to rely on the case of Ventura Cruel, which is your case, Judge Howard, that says that the determination is made as of the time of judgment. And in this case, through no fault of his disguise, he didn't have the information before him at the time of the Rule 11 hearing. Thank you, Mr. Gorman. Thank you. May I please support David Goodhand for the United States? This case squarely fits within the four corners of this court's decision in the United States versus Lujan. There was an unconditional plea. The defendant could have preserved his right to pursue the purported breach of the proper agreement. Did not do that below. Did not provide a conditional plea. He has thus waived any non-jurisdictional claims that precede the guilty plea. This falls squarely into that category. I can say just a couple of factual points I want to clear up. These CASCAR waivers are very common because CASCAR in 1972 imposed a significant burden on the government if it does not carve out that derivative use. So to avoid that very significant burden but still provide defendants the benefits that come from proffers, the government quite regularly carves that out. That's one point. I'm sorry. So if I understand the way this works, if the defendant in the proffer says, Harry and I robbed the bank, you can't put into evidence that the defendant told you that he and Harry robbed the bank or that you had a confession. You can, though, go talk to Harry, and if Harry tells you he and the defendant robbed the bank, you can put Harry on the stand to say that. That's the way these work. Exactly. And this court's decision in Jimenez is very clear about that. Evidence produced in front of a grand jury or evidence produced in front of a pettit jury, either the defendant's statements or the physical evidence the defendant provided. The grand jury materials, while ultimately irrelevant to this issue, the grand jury materials were provided to the defendant two weeks at least before the guilty plea. But in any event, if the defendant had any doubts or concerns relating to the proffer agreement, he could have, of course, filed a motion to dismiss, for example, and then asked the court to look at the grand jury transcripts in camera. So if he had wanted to pursue this line of inquiry that he's now sort of pressing on appeal, it would have been a very easy matter for him to get this aired out in front of the district court. But, of course, ultimately the core point here is that, as we've chronicled in our brief, there was absolutely no misconduct here. There was no breach of the plea agreement. You can go through those grand jury transcripts, as we have done, and shown to this court, as we could have shown to the district court, that the letter of the proffer agreement was adhered to. The government had significant other independent sources. The lender's documents, the borrowers were interviewed. The recruiters were interviewed. The FBI carefully traced the money. No misconduct. This was a classic case of a proffer agreement being adhered to. The defendant decided to take his plea, and he did, without preserving the opportunity to present his claims now on appeal. I'd be happy to answer any other questions if the court has any. Do you happen to know the status of the scope of Castagar letters today with respect to other venues? So, for example, a Castagar letter in this district, does it also bind U.S. Attorney's offices in other districts? I don't want to go down that road because I actually don't know the answer to that. I'd be just speaking out of turn if I tried to explain that. Fair enough. Thank you. Thank you. We would ask that you affirm the conviction and sentence below. Thank you.